Good morning, may it please the court. Jonathan Eisenman for the City of Los Angeles. I'd like to reserve three minutes for rebuttal. All right, watch your clock. I want to expand on a point the city made on pages 75 of the opening brief and 19 of the reply brief. It's a fallacy that seems to underlie my friend's theory of the case, that whenever a police officer uses state granted peace officer authority, he acts within the scope of his employment with the police agency that employs him. Once those two concepts are disentangled, particularly once they're disentangled, it leaves unanswered the question of how what Salvador Sanchez did here, even if an exercise of his peace officer authority, came within the scope of his LAPD employment. I think maybe the easiest way to kind of disentangle these concepts, it's particularly important in this case, is to look at some of the other people who have peace officer authority in the state to whom the legislature is... Can I interrupt you to make sure that I'm following the instruction? And right now I'm arguing actually that the evidence is insufficient to support the verdict. Really tough standard. It is, I'm aware of that Judge Kirsten. Okay, so you're talking sufficiency, I'll listen. Okay, thank you. I want to begin again with the point that the fact that Sanchez was exercising peace officer authority, if we take that to be established here, is not itself sufficient to show that he was acting in scope of his LAPD employment. One way to see that is to look at other people to whom the state has granted peace officer authority and ask whether, if they exercised it under the same circumstances, they would have been acting in the scope of their employment. So for example, the legislature has granted people like dental board investigators, horse racing board investigators, and lottery security officers peace officer authority to respond to public offenses committed in their presence if there's an immediate danger to person or property. So same type of authority that Sanchez faced here. If under the same circumstances a dental board investigator exercised peace officer authority, whatever that means, in the Costco, I don't think anybody would say that he was seriously acting within the scope of his employment with the state dental board. Well that's a little bit, I mean, here there's no dispute, right, that an officer would technically have an expectation to respond if there is probable cause that an assault occurred. And there's, I mean, they had a bullets issued by the city, he had the right to carry concealed weapon because of his status as a police officer. Given the breadth of California scope of employment standard and the toughness of the sufficiency of the evidence standard, I'm not sure that your analogy is really helpful. So I think Judge Sung, it actually is an apt analogy because the point is, what is the enterprise in which the agency is engaged? The state dental board, I don't think anyone would say, is engaged in the enterprise of generally policing, much less policing in Corona. The LAPD is also not engaged in the enterprise of policing the city of Corona. The fact that Sanchez was there with a gun he could carry, again state law, not LAPD policy, gave him the authority to carry it by virtue of his status as a peace officer. The fact that the bullets in the gun, I suppose there's some dispute where that came from, although I don't think it matters, because I think California law is pretty clear on this point that even using your employer's instrumentalities to commit a tort doesn't put the tort within the scope of employment. I don't know what evidence there is here that connects what Sanchez did to the enterprise in which the LAPD was engaged, and I think that's the important point. He's responding, he said, to a police officer shooting. He thought he was hit in the head, he thought he'd been shot, he announced, I'm a police officer and he fired back. What can I tell you, that's what the evidence, the standard is so very difficult. I'm not disputing what the evidence is. I'm merely saying that that evidence may prove that he acted as a peace officer when he responded, but it doesn't necessarily mean that he acted within the scope of the enterprise in which the LAPD was engaged. Those two things aren't coextensive, and I don't think there's evidence to show that they are coextensive. I think that's sort of  one of the things, if there is, I guess, any evidence that would support finding that Sanchez acted in the scope of his employment, would include his deposition testimony, that I was acting according to my training, this sort of answer that's a non-answer to the question. Given that that was his deposition testimony, it's particularly impactful to the city here that they weren't able to examine Sanchez on the stand. What the district judge did, I think, it's a mistake of law, I mean, to say, I'm going to allow you to make this blanket invocation, which I think if you go back and look at the transcript of what the district judge actually did, Sanchez's attorney stood up and said he's gonna invoke it, said he's gonna invoke as to everything. Excuse me, I lost that. I'm sorry. If you look at what the district judge actually did, Sanchez's attorney stood up and said Sanchez is gonna invoke as to everything. And was that the day before trial? That was, I don't know if it was the day before trial. It may have been two days before trial. Okay. Sanchez is going to invoke as to everything. The district judge didn't say, wait a second, can Sanchez invoke as to everything? He said, Sanchez can invoke as to questions, period. Can you back up? Yes. He'd been deposed, Officer Sanchez had been deposed. Yes. And he pled the fifth question by question, is that fair? That's correct. So he, but he wasn't subject to charges at that time? He was, I believe at that time... Was there an investigation or something? At that time it was after the time to prosecute, but before the State Attorney General opted to prosecute. Okay. So at any rate, he invoked the fifth. He didn't have charges pending? Correct. And by the time you got to, I think a day or two before trial, was he charged? Yes. Okay. And so at this point, he, and there's no other testimony, right? Just the deposition testimony where he invokes question by question? Correct. And presumably was represented at the deposition? Yes. Okay. And so that's the background. I'm trying to make sure I've got this right. It's been a long day. All right. Lots of arguments today. And so he, his lawyer said he's going to invoke... As to everything but his name. And the district judge didn't ask, wait a minute, is it possible that he can invoke as to everything but his name? He began with the assumption, what's the procedure by which this isn't gonna be done in front of the jury? That's the question that he asked the city. The city's response is, it should be done in front of the jury. He has no right to make a blanket invocation. And the district judge pressed the city only to explain why that wouldn't be prejudicial, given the availability of a... Well, when the district court judge said, what's your authority for your position that he should invoke in front of the jury? The response is, we have none. And then when the district court said, what difference would it make? He argued, the argument was repeatedly just that the city wanted the jury to see him invoke, question by question. And then ultimately, the city did prevail in saying they wanted a list of questions presented to the jury for which an adverse inference could be drawn on each specific question. Why wasn't that enough? I don't think it's right to say that that's the city prevailing in the sense that they took a situation they were stuck with, which is we only have the deposition testimony. Did the city object to the introduction? Because you're somehow prejudicial to have the video deposition, but not the at trial questioning. But I don't see any objection from the city saying don't introduce the video deposition. That's correct, Judge Sung. There's no objection to the introduction of the video deposition. Would it be better if there had been? Yes. I don't think that solves the problem that it's error to allow the blanket invocation. It's prejudicial in the sense that a live witness testimony is preferable. I think the case law on that point is pretty clear. What questions could you have asked Mr. Sanchez to which he would not have invoked the Fifth Amendment? I think two answers to that point. One, the questions would have been related to his incentives to have testified as he did previously. He could have been asked about his training... Incentives to what? Sorry. To have testified as he did at his deposition. So basically, his incentives based on the fact that he was seeking indemnity to present the case as he had. So to testify... But between the time of the deposition and the time of the trial, he essentially conceded... Hadn't he? That he was gonna be... Or that the plaintiffs would not seek to execute a judgment in excess of his insurance coverage. He had entered that... Yes, he made a settlement agreement to that effect. Had that been the case as of the time of the deposition? The city became aware of it only as of the day before the Fifth Amendment invocation. Well, does that mean you don't know whether it was true at the time of the deposition in council, or was it... I'm trying to figure out. I don't know. The city's only knowledge of this was because there was an email sent to the court and to council, which is how it ended up in the record, that Sanchez had reached this agreement. And then... So did the city... So the city didn't have... Is your argument the city didn't have an opportunity to talk about that at the deposition, or did the city not know about it, or not choose to go into it, or... Well, the city didn't know about it, so they didn't have an opportunity to talk about it, but... Did the city argue this at the trial? At the trial, the city's ability to argue it, I think, would have been tied to its ability to get Sanchez on the stand. Well, did this... I don't know if that's true. I don't know if there's a written document. I don't know if... That's my question. Did the jury hear about it? About the settlement agreement? No, it did not. Did the city ever ask the district court judge to add questions about the settlement agreement to the list of questions for which the city would have asked Sanchez, and then adverse inference can be drawn? The city didn't, but I should be clear that the list of questions that the city... That you're talking about, I think, Judge Sung, is the questions to which Sanchez took the fifth at his deposition. Right. No, I understand that's how that list was generated, but it seems to me you're arguing that you're prejudiced by your inability to ask additional questions that weren't asked at the deposition. But I don't see any point at which there was a motion or a request or anything where the city said, You're not gonna let him testify. We have these additional questions we would ask him, and we want... If he's gonna... Since he's gonna plead the fifth, we want the fifth. I think that's true. That would have been a helpful thing to do. But again, I'm gonna have to concede that. Right. But given the fact that the district judge's position was, he's gonna make a blanket invocation, not only that, but when the district judge questioned him, the question that he asked him was the one that Supreme Court case law says you're not supposed to rely on, which is, Do you think you're gonna invoke his everything? Does your lawyer think you can invoke his everything? That's the only thing he asked, and he accepted that answer. So having allowed Sanchez to make a blanket invocation, I think it's... I don't wanna say unfair, but it's... I can't see anywhere in the record that the city came back or that the district court acknowledged the difference between invoking the fifth in a criminal case and invoking the fifth in a civil case. The district court did not acknowledge that difference. Well, did the city brief it or argue it? Or I can't see anybody arguing it in the trial court. Did I miss it? I don't think you missed it. I don't think anybody briefed it or argued it because, I mean, I can't speak for the plaintiffs, but as for the city, again, this was, in a way, sprung on them. So the city was aware that Sanchez obviously would take the fifth as to some things. I think they'd written that in their pre trial documents. And at the point that he would have had to testify at the trial, he had felony charges, three felony charges pending against him? That's correct. So he would have been allowed to take the fifth to a wide variety of questions related to this incident. A wide variety of questions related to this incident, but I think not all of them, and I think critically, questions that are germane to the facts that the extent that they do prove this show that he was acting in the scope of his authority. So questions about... What about the indemnification agreement? Would that have been fair game? I think it would have been fair game. Did you argue that? Did the city argue that to the district court judge? The city did not argue that to the district court judge. Again, the timeline of events, the city is aware of this agreement only by virtue of an email it receives the day before Sanchez appears and says, taking the fifth is everything. But I don't know how the existence of a settlement agreement would have been germane to the issues at trial. I think it's part of a constellation of evidence, including just generally that Sanchez acted, including in filling out a request for representation. And I understand there was some testimony, fleeting testimony that the request for representation was conferring an advantage on him if he had gotten city representation. There was no testimony, no evidence that came in that he would also get indemnity. And I think the agreement aside, there could also be testimony elicited about his right to seek indemnity from the city. But he wouldn't have a right if he was acting outside the scope of his employment. That's correct, he has to be active. That's what you're arguing to us, that he can't have it both ways. That he had an incentive to testify that he was active within the court  to further his own self. Correct, that's exactly right. And the city should have been allowed to examine him about that. Whether you argued it or not, was there anything in evidence where the district court was aware of that settlement agreement? It's... I mean, in evidence, no, but the way the city... I don't mean evidence. I mean, was there any... I don't know if anything was filed with the district court where he was aware of it. So it ended up lodged nunk pro tonk because it was emailed to the district judge's courtroom deputy at the same time as it was the day before. So at the same time, it was emailed to the city. The day before what? The day before Sanchez took the fifth. So it was immediately preceding the trial, a day, two days, whatever it was. We wanted to argue in front of the jury that he wouldn't have entered into the settlement agreement had the city agreed to indemnify him. And therefore, that meant he was acting outside the scope. I think the argument to the jury would have been that Sanchez, in the way he presented facts at his deposition, and even, you could say, because it's a civil case, in his refusal to take the stand and testify about... It could be in one sense, anything. If he did take the stand, he could have asked them specifically questions about it. His refusal to answer that indicates that he had an incentive in giving the answers that he did give when he gave them to shade things against the city. In other words, that this isn't a case where the defendants are aligned. I'm not sure that that's clear, nor is it a case where Sanchez is earnestly accepting responsibility for what he did, as his counsel's argument and the plaintiff's argument seem to suggest. It's a case where there's a lot of evidence that by faulting the city, Sanchez is exculpating himself entirely from any kind of, at least, damages, even if he faces... But he isn't faulting the city. I'm sorry? How is he faulting the city? Sanchez? Yeah. He's faulting his training, without speaking what training it was that dictated that this would happen. But you could have asked him that at the deposition. And at the deposition, he did take the fifthest of those questions when he was asked specifically what about his training. But then he would have taken the fifth to that question in trial. That's correct, but I think we could have asked, without getting into the application of the training to the events that happened, just questions about what the training was. Ways to dig into the fact... You did ask those questions at the adverse inference from his refusal to answer. That's true. Even though... But yeah, I would say that the adverse inference... I'm sorry, I'm over my time. I'll just finish responding. The effect of an adverse inference, I don't think is the same as having... An adverse inference instruction is not the same as having the witness in front of the jury take the fifth to something where it seems dubious that he ought to be taking it to begin with. I understand that the adverse instruction is meant to be a palliative remedy, something like that, for the fact that he's taking the fifth. But I think we're back to this question of why should he be allowed to avoid doing it in front of the jury to begin with, on a blanket basis. I don't think... Has any circuit ever allowed it? Has any circuit ever allowed a blanket invocation of the fifth in a civil case? I'm not sure that any has. I'm not aware of that authority, at least. Thank you. Alright, thank you, counsel. I'm looking at my clock. I know it's been a long morning for all of you, so we're, I think, still in morning, but almost to afternoon. My name is Dale Gallipo, and I'm representing the appellees. Maybe I could just start with a few comments on the Fifth Amendment issue, if that's okay, since we were just on it. I think, first of all, there are cases for the blanket invocation. We cited Clinger and Tesui and Flores Blanco. Those are criminal cases. That is true. But there's certainly no civil case that says a new trial should be granted if their judge allows a blanket invocation. At least, there's no case cited by the opposing side. I think the toughest case is Glanzner, and I don't know if I'm pronouncing that correctly, even though it's a Ninth Circuit case. Right. But what I think is important, and just so we have the timing, I believe he was charged about a month or two before the trial. The settlement agreement was reached a day or two before the trial, and we emailed counsel and the court to let them know that. The position of the city was they clearly agreed he had the right to invoke. They never said he didn't. What I think is very important here, as Judge Sung has pointed out, they didn't make a proffer to the court. They didn't say, Judge, there's questions that we didn't ask him in his deposition. Well, they did say that. They said there's questions we didn't ask him. But they didn't say what the questions would be. They didn't make a proffer to say, here's what we wanna ask him. In fact, they didn't say, for example, they wanna get into the settlement or indemnification agreement. And importantly, they could have got into that with other witnesses, including the plaintiffs. They, we believe, just made a tactical decision not to go there in the trial, because maybe they weighed whether it would be good or not good for that to come out, or weighed whether that would be permitted in any event. But I think that's an important fact to consider. If the record was such that, here's the 10 questions we wanna ask Judge, and we wanna include questions on the indemnification and settlement, we think it's really important here, I think you would have a much clearer record to decide this particular issue. We definitely would. We definitely would, and it's a frustrating record. Yes, but I... But I don't think it was a perpetuation deposition. Well, technically, no. But what's really important when you... Again, forgive me for interrupting, but we always play catch up. You know the case much better, but I wanna make sure I'm not making an assumption. I understand this was the discovery dep. That is correct. And I don't know how they would have anticipated that he was going to invoke a blanket privilege at trial. Well, that's partially true, but here's what's important when you're looking at air... How is it partially untrue? How could they... It's partially untrue because at the deposition, it was discussed that he's gonna invoke on questions relating to the shooting, and because there is a concern that he's gonna be prosecuted in the future. Sure, and he... Sure, but at the time of the deposition, he invoked on a question by question basis, and at trial, he invoked, in a civil case, he invoked it on a blanket basis, and we've never approved that. I can't find a single circuit that's approved it. So this only goes to... I'm not trying to be argumentative, but you did say where we left off here was, how could they have anticipated this? And you said partially true, so... Partially. Well, because they knew that there was potential criminal prosecution, and in fact, I think that is why the attorney for the city at the depot asked a lot of questions. But counsel, just because there's... Then he was... We covered that a minute ago. He's subject to charges at the time of the civil case. No question he's gonna get to invoke the fifth. The question is, in a civil case, why was he allowed to invoke it on a blanket basis? That may be true. Okay. That may be true, but what I'm trying to get at, when you're looking at the prejudice and how this played out, in addition to the city not proffering, here's what we wanna get into. Importantly, well before his deposition, in his FID interviews, he said he was responding to what he perceived an active shooter situation as a peace officer. Yes. Then in an employee report, which he signed well before his deposition, and well before any settlement occurred, he indicated all the reasons he was acting under the course and scope of his employment, and under color of law, which the city introduced into evidence. I'm trying to figure out what... I think this is all accurate. I'm trying to figure out what it has to do with him invoking the fifth on a blanket basis. Well, because the argument, I think, is if he would have had to fifth in front of the jury, or if we could have asked him about that indemnification agreement, we could have shown that his testimony at the deposition was just untrue. I take it that's the argument, that somehow they wanted to... The argument that he's articulated, I'm not trying to play devil's advocate, but if you wanna respond, the argument that he's articulated is that the jury would have understood that Officer Sanchez was personally motivated, had a personal incentive, it was in his best interest to argue the way he did, that he acted within the course and scope, so that his personal assets would not be put in jeopardy. It's a pretty straightforward argument. Correct. So the two points to that, number one, they did make that argument. That's part of their closing argument. They argued that throughout the case. That's why he said, in the way he did in his employee report, that's why he gave the deposition testimony. That was their argument, that the jury didn't accept because of the overwhelming evidence we believe supporting that he was acting in the course and scope of his employment. Secondly, as Judge Sum pointed out, the court did allow the deposition testimony, which the city wanted in, did allow the Fifth Amendment invocations there, and did allow an adverse inference instruction to be given to the jury on multiple questions, I think six that were read and maybe an additional 14. So getting back, and I think Judge Wardlaw pointed out, what exactly would they have asked him that he couldn't have pled the Fifth to, that would have made a difference? Right, and opposing counsel's strongest argument, I think, is the one that we're talking about this morning, which is the settlement agreement. Right, and the problem... Yes, and that probably is their best argument there. But the problem, I would say to Judge Christian with that, is they had ample ways to get in the settlement agreement through other witnesses, including the plaintiffs who entered into the agreement, who testified. They never went there, nor did they ever make a proffer to the court. So I think one reasonable inference is they made a tactical decision not to get into that, because although it might help them in some ways, they felt it might hurt them in other ways. And I think that's a fair reading, and I really think if they wanted to protect the appellate record for review, they should have told the court, the reason we want them to testify is we want to talk about the settlement agreement with him. And we could have had the discussion. But we don't think there's prejudicial error there necessitating a new trial. What about our Glanzer case? What do you do with that language there that talks about in a civil case, when a person invokes the Fifth, they don't get to trump the other party's right to a fair trial? Well, in this case, I don't think it trumped it. I think this was an unusual situation where someone had just been charged with homicide a month or two before the trial. And obviously, he was told by his criminal defense lawyer not to answer any questions. And the judge at least had a hearing with him outside the presence to have that discussion. From the plaintiff's position, if the city had proffered the questions or proffered the argument and we could have had the discussion, I think we'd have a different case on appeal than we do. Do we have to make new law then? Or do you know of authority where a court has approved of a blanket assertion in a civil case? I don't think we have to make new law. I would agree that there's probably no case specifically on point that either side has found. But I think Fifth Amendment protections are pretty well known. And for someone charged with... No, I don't know of any case. That's what I'm asking both of you. I know of no case where the Fifth Amendment has been allowed to be invoked on a blanket basis in a civil case. So I've been not sneaky about this. I'm trying to figure out, do we have any authority or would we need to make new law? Well, you could make new law on the point if you thought it was necessary. But I don't believe there's any prejudicial error here based on the totality of the record. Two different things, sir. Tell me how we wouldn't make new law by ruling in your favor here. Well, I guess because I just think the Fifth Amendment protection is so strong. It's just so well known and strong. And I don't think... There's even a jury instruction, a Casey jury instruction, 216, that goes to this very point to take a blanket invocation of the Fifth Amendment outside the presence of the jury in state cases. Evidence code section 913. So I don't think this is anything totally new. I don't think that was indicated in the briefing. But there is a jury instruction and evidence code that's a state that specifically covers it. What is that jury instruction? Casey 216, and the evidence code is section 913. This is in California? Yeah, this is a Casey instruction. I think it would be new law. It may be that we have a situation where the city didn't raise the arguments and didn't tee this up to the district court. That's a different circumstance. I understand. Okay. Okay. I guess... Or that we say it's error, but it's not prejudicial given the circumstances. That's the point I'm trying to make. It doesn't rise, based on this record, to prejudicial error requiring a new trial. Or we could make new law and say that in the circumstances when the witness is up for murder charges and virtually anything he's asked is going to be essential to those charges, that what's the point of doing a question-by- question Fifth Amendment thing? Yes. The highest, most serious charges you can be up for. Yes, I agree, Judge Wardlaw. And the other points are, briefly, there is substantial evidence, and I think this Court is aware, on the course and scope. And it's not just the gun. But it's only because California's course and scope law is so uniquely broad that it captures... That is true, Judge Wardlaw. But in other cases that we cited where they held course and scope, and those would include Inouye and Perez 2, which adopts the dissent of Henrickson, and Reason and Bradley, all cases where the officer was off-duty, announced himself as a police officer, and then open-fired were held to be under the course and scope. We feel we have so much more in this case because of some of what's already been mentioned, the gun, the ammunition, the ID, the holster, him announcing himself as a police officer. Maybe most importantly, they have specific training on using force, including deadly force, on off-duty actions. They have a specific policy on off-duty actions. So just to be clear, the fact of the settlement agreement with the officer alone did come in? No. It did not come into evidence. The point I'm trying to make... It could have been elicited. It could have been. I think it's clear the city made a tactical decision they didn't want to go there. Because if they wanted to go there, they would have told the judge, Judge, we want to ask them about this settlement agreement. That's what we want. Or they would have said, Plaintiff 1, let's talk about the settlement agreement you entered into. But it would have helped their case because it would have shown distance between the police department and this officer. I think that it could potentially hurt their case. And I think that's why they didn't do it. How? Well, it could be a suggestion that the officer is only going to pay the first $400 and they're going to pay the rest. And therefore, if there's a big verdict, we might have to pay it. And I think they made a tactical decision. They didn't want the jury to know those terms. So I think, again, I understand the discussion that that isn't a point, at least to entertain. But if they had brought it up with the court, made an offer of proof, or asked the other plaintiffs, I think we'd have a different record. And so the other thing regarding the A section and B section, I don't think anyone has suggested today that's plein air. I don't know what the reply is going to be. But I want to point out that it's an instruction that's been there for 20 years. It is a fair formulation of the law. And it was never objected to, as this Court's aware, the A section. review, they might bring up in their rebuttal the case, I believe, authored by Judge Christian, and that's Behrchild. That's very, very different than this. Very, very different. Yes. But I think the transcript here shows when the final instruction was presented, city's attorney said he was fine with it or something like that. Right. I mean, you might even have a waiver completely. But certainly at a minimum plein air. And when you go through the plein air review, the jury instructions were appropriate. There was substantial evidence. What I was getting to, which makes this case so unique, is their own policy says, you know, be careful with the city's liability when you take off-duty's actions. And their own procedure is to govern it by the same standard, with the same investigation, the same standard. So that's their training and policy. And in a way, interestingly, they had a policy not to take off-duty actions. But it was so strong in that case, the statewide authority, the court held, we're going to overrule the policy and still find it was in the course and scope of employment. Here we have that specific policy. And we have the color of law finding, as counsel pointed out, the repeated, you know, communication of his police officer status after the incident as well as before the incident and all the other points we made. So we think the evidence is substantial. I thought the district court judge, Judge Jesus Bernal, did a good job in his post-trial order, explaining the evidence, supporting everything. I don't even know if they raised the Fifth Amendment issue in post-trial, quite frankly. But so we believe that the judgment should be affirmed. And regarding this issue of the Fifth Amendment, I don't think there's enough there based on this record to grant a new trial on it. Judge Christian, I agree with you. It's an interesting conversation that there's no case on point in whether we have to address it. But for someone facing homicide charges who's represented by a criminal defense attorney who tells them you're not answering any question, I don't care what it is, and the judge went through the exercise of having that discussion with him and the city making no proffer of what the questions would be, and then being allowed at least to have the deposition played and the adverse inference instruction, I don't see the prejudice under the totality of the facts of this case. All right, thank you very much. Thank you all very much. Mr. Galifo, Mr. Eisenman, I'll give you a couple minutes. Let me just make a few quick points. One is the citation of Inouye as a controlling case here. I would refer the court to a case called Melendez v. City of Los Angeles. It's 73 Cal Reporter 2nd at 469, which explains why Inouye, in fact, does not control here and that the only holding in Inouye is, as the reply brief said, that you cannot, as a matter of law, render someone outside the scope of their employment just by saying if you're never in the scope of your employment, if you're off duty. More interestingly, Melendez held that two LAPD officers who were moonlighting as security guards without satisfying penal code section 70's requirements for doing that, even after they announced themselves as police officers and flashed a badge and shot someone, and even after they were investigated by the Force Investigation Division, were acting outside the scope of their employment as a matter of law in the case throughout a jury verdict on that fact. So again, that's Melendez v. City of Los Angeles, 73 Cal Reporter 2nd at 469. You're arguing sufficiency, so we have to... That's not the way it works. The jury could have reached a different result. That's true, Your Honor. I'm just pointing out that Inouye cannot dictate the outcome here as a matter of law. Let me say as well on the prejudice of the Fifth Amendment. So if my friend is correct that the city tried to argue about the indemnity rights, tried to point the finger at Sanchez and say he's biased against us, the fact that they weren't allowed to put him on the stand makes the prejudice worse, not better. The fact that they had to argue these things without being able to put him in front of the jury. So I think that's important to note as well. And finally, I know the court is taking the position sufficiency of the evidence is a hard argument to make. I understand it's a hard argument to make. I would just urge you to consider the difference between saying the evidence is sufficient to prove even that Sanchez acted with peace officer authority versus that what his actions were were something that were within the enterprise of policing the City of Los Angeles. Because again, the city, like any of the other entities that has officers who have peace officer status, isn't engaged in the enterprise of policing the entire state. So even if what Sanchez did in Costco is an act of policing, I really urge you to consider what makes it an act of policing the city and not to consider simply but-for or incident-to relationships between the city and Sanchez and the city and the steward. Just on that final point, it seems to me the standard isn't there. within the employer's business, but is it an outgrowth of that? So how do you deal with that? So I think the interesting thing about framing it that way is one of the points that my friend has made is if it cuts against us, and in fact, I think it cuts decisively against him, which is that Sanchez didn't know these people, didn't know the French's before. You could see a case where, let's say, Sanchez had encountered the French's in Los Angeles while he was doing his policing business and then ran into them again at the Costco and something transpired out of that, and you would say, well, that's connected. And in fact, if you look at the Supreme Court's case, let's say, in farmer's insurance, there's a list of cases where the court found this causal nexus when there's an intentional tort. And those are cases where, for example, the truck driver who gets in a fight and hits someone with a wrench while he's delivering something for his employer.  Because the employment is what brought those two together in those circumstances, and the employee was motivated by the employment to commit the tort. Cases like the drunk employees fighting after work when, you could say, the dispute arose out of their work duties. Those are cases where the tort is somehow connected to the job. And if my friend could connect Sanchez's tort to his work policing the city of Los Angeles, you might say, well, wait, this was something that was within the city's enterprise. But here you can't do that. It could be any other officer imbued with the same authority doing the same thing, and you would have to ask what it is about their employment that's connected to that tort rather than what it is about the exercise of the authority that's connected to what happened. I think that's the critical difference, and I think that's where the evidence is not substantial enough. All right. Thank you, counsel. Thank you very much. French v. City of Los Angeles will be submitted, and the session of the court is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: WARDLAW, CHRISTEN, SUNG